Pleased to hear in Richardson v. Prince George's County. That's a second case Mr. Hallett. Whichever one, we're happy to hear from you. Good morning, your honors, and may it please the court. My name is Jordan Hallett, and I have the distinct pleasure of representing plaintiff appellant Randy Richardson, who's a small business owner that was denied the opportunity to participate in Prince George's County permitting process on an equal footing with large politically connected businesses. We argued in our brief that the district court erred when it granted appellee's motion for judgment on the pleadings. Holding that, the appellant's civil rights claims were, quote, too speculative for Article 3 purposes, standing purposes. Mr. Hallett, if I could just jump in with an organizational question. As I understand it, your argument is solely on appeal and equal protection argument, and that you're not raising the due process, you're not raising the negligence that appeared earlier. Correct, your honor. Okay, thank you. Thank you. The district court's ruling was wrong for two independent reasons. First, requiring Mr. Richardson to have applied for and been denied a permit runs afoul of the well-established standing doctrine for equal protection claims. The Supreme Court has been clear on this point. When challenging a discriminatory barrier, the injury is the denial of equal treatment, not the ultimate inability to obtain the benefit. So to get this Article 3 standing on equal protection, what do you maintain is the injury in fact? It's the erection of the barrier, the preclusion, your honor, of even being able to move forward in the permitting process on an equal standing from similar situated tenants at the same mall, at the same time. So it's not just a denial of the permitting process, it is the discriminatory barrier that you maintain is the basis for it. So then that brings to question, is it a right claim if you didn't actually submit the permit? Your honor, that goes to my next dovetail point on this. We argue that it is right, and specifically under the futility exception that exists here for rightness. This court has not fully developed it with respect to, as related to other sister courts as we allege in our brief, but in this Court's Hamilton decision back in 2017, it adopted the futility exception that the sister circuits, some of the sister circuits have adopted. And that is, if the plaintiff has made a substantial showing, right, a substantial showing, that applying for the benefit would have been futile. On the futile, the question is, are you getting to the point where you can just sort of bypass the entire permitting process on the grounds that the whole permitting process is a sham and requiring us to go through it? Is futile. In other words, this is a, seems, the question I have with respect to the argument you raised is whether it isn't very broad and giving a sort of a free pass to anyone who doesn't want to be bothered with the permitting process. It seems to me it comes pretty, the futility argument as you framed it, comes pretty close to gutting the permitting process. Your Honor, I agree to a point. I will say it's a narrow exception. It is applied narrowly. And so in the context on this case, judgment on the pleadings, we're just looking at the pleadings. And for the futility exception to come in play, the plaintiff has to allege sufficient facts to meet this substantial showing that applying for this benefit would have been futile. Because the Supreme Court has made clear, and this court in 2017 made clear, that plaintiffs or individuals do not have to submit to, do not have to apply, do not have to submit to. Well, I mean, I take your point that it may not, the ripeness claim may not be wrapped up simply because, you can't say that something is not ripe simply automatically because they haven't applied or they haven't been denied a permit. That seems to me relevant, that you never applied. And it seems to me relevant that you were never denied a permit. Not dispositive, and I get you on that point that we're talking about equal access. But it doesn't weigh in your favor that you never applied and that you never were denied the permit. So then the question becomes, why is this futile? And on page 102 of the joint appendix, I think it's the district court's opinion where they talk about a letter from the director of the Department of Permitting that asks, and I said this was not just us, but a number of officials had asked to meet with the plaintiff and talk about solutions to this quandary. And they invite the plaintiff here to all sorts of conversations with senior city officials. And that sounds to me, it doesn't suggest a discriminatory barrier, it suggests the contrary, which is that the officials here are open to discussions on the matter and want to engage in a collaborative process to iron out whatever difficulties are involved. And how do you get around the fact that these invitations to meet with us, come on, let's talk about it, let's collaborate, and you say, oh, well, it would be futile to talk to you. And that's awkward for me. I completely agree, Your Honor, and I wholeheartedly agree, because that invitation by officials does undercut, on its face, the futility argument. But as the complaint alleges, and I'll get to this in a minute too, but as the complaint alleges, the ultimate meeting with the then director of Department of Permitting Inspectors and Enforcement was canceled. And then the appellant here, Mr. Richardson, tried continuously to meet with the director afterwards and was not permitted to do so. With the other county officials, all of that was not, let's get a permit, let's figure out how to get you out and how we were going to make this right, because things are not going to move forward here. Because the mall doesn't have a use and occupancy permit, and we're not going to actually be able to move forward. So let's figure out an alternative. I admit that bureaucracy can be frustrating. I mean, we've all in our lives, every person in this room has had to deal with a bureaucracy at one point or another. And you get a lot of the runarounds, and you get all sorts of shell games and everything, and it can be infuriating. But the question is here, in light of equal protection law, how are the innate frustrations of any permitting process related to race? And that's what I don't understand. Why would they not be related to traffic congestion or to the size of the business or to the kind of commercial mix that the owners of the shopping center wanted to have for the shopping center as a whole? I mean, I can think of a thousand different reasons why it isn't related to race at all. But just a general frustration with every permitting process. I don't know of any permitting process that just, oh, goes so smoothly. Your Honor, I... Could I ask, when you answer Judge Wilkinson, could you clarify also, would be helpful, as I understand it, you're not just arguing race. You're talking about big guys versus little guys, people being treated differently based on the Chipotles and the shopper's worlds we're moving in, and Mr. Richardson was moving nowhere. And so how much of your equal protection is based on the racist issue, and how much is it based on the big guy, little guy? Yes, absolutely. And, Your Honor, I'll start with Judge Wilkinson's, and I'll dovetail my response to your question into that. Your Honor, I completely wholeheartedly agree, as someone who has a million cases against the same Department of Permitting, Inspections, and Enforcement agency, if any of those reasons that Your Honor just stated was the basis here, we would not be here. But those weren't the basis that were provided to our client. And in fact, the agency told our client one thing, right, you can't get a permit because the mall doesn't have a permit. So it doesn't matter what you do, you can't get it until the mall figures it out. Now we found out in discovery, although we weren't able to present this, and that's my next point with the 12C motion. Let me get back to Judge Keenan's good question, and that is, is this a racial claim, or is this a big guy versus little guy claim? So initially, right, as a result of discovery, it is predominantly a big guy versus little guy, a class of one equal protection claim. That's what we spent six months in discovery finding out, that this is a difference of treatment between the same tenants in the same space. If you're a big box store, you've got a different level of treatment, even though the mall didn't have a use and occupancy permit. But then we are back to rational basis equal protection. Well, how many times do we overturn a claim on the basis of an irrational basis? I mean, it seems to me you might have been in a stronger position if you say this is a racial claim, because then you're in some kind of strict scrutiny. But when you say, no, this may be a big guy, little guy, first of all, that suggests to me we are back into rational basis. And second of all, this Willowbrook class of one business, it's almost never invoked. They did it one case, and then they have retreated from it, and it is not a staple of Supreme Court jurisprudence. And that is because anybody at any time can, hey, I was denied this, I'm a class of one just because I'm me. And I think that's, if this is not a racial claim, then you run into some real problems. And, Your Honor, and I take your point, and you're absolutely correct. It is very difficult to win on a rational basis class of one. I mean, it has to be arbitrary and capricious in the terms of how the agency is treating one individual. It is a predominant big and little guy, but we have, and in DISCOVER, we have determined that only the African-Americans and minorities were treated differently in the permitting process. They're the only ones who were denied, and we have, well, we have— So it's a racial claim. Which is it? Your Honor, so my point is that it's both. It's just the—and it can be both. It's just that we have developed in DISCOVER that it is clear that if you were a large business that you were receiving preferential treatment. Now, it just so happened that— So what? I mean, there are many shopping centers that want big anchor stores. But, Your Honor, erecting— That's what brings in the business. No, and I understand that, Your Honor. So the smaller stores, the big stores, the anchor stores bring in the business for the smaller concerns. Your Honor, absolutely. And if that was the reason, but that's not what DPI, that's not what the Department of Permitting Inspections and Enforcement did. What they did was said, you will not be able to get a use and occupancy permit, minority small business owner. You will not be able to get one because the mall has all of these issues. Now, the interesting thing here, as alleged in the complaint, Mr. Richardson's store was right below Shopper's World in the same building. And Shopper's World was given the opportunity to operate lawfully and open a business at the same time that Mr. Richardson was saying, wait, wait, wait, why is—you told me that we wouldn't be able to operate because the mall doesn't have a use and occupancy— I'm sorry, Your Honors, my time has expired. Let me just ask you one quick question. You were talking about Shopper's. Shopper's was using the same sprinkler system, right? Yes, Your Honor. Okay, and Richardson was being fined. What was it, in March? No, in February 26, he failed the inspection, including the sprinkler system, yet Shopper's moved in one month later using the same sprinkler system. How does that focus in? Your Honor, that just shows the difference of treatment being applied to Mr. Richardson here. It was very clear that the county did not—the county, the mall owners wanted him to open. They tried everything. They tried working with the county. That the county did not want him to open his business, and they used the excuse that the mall didn't have a use and occupancy permit for him specifically and the other minority owners that we deposed, in this case over six months of discovery, that they did not want those businesses to open. Okay, so we're going to be in a situation now where every shopping center around, all through the circuit, that every decision with respect to occupancy or to which stores are allowed to open and which stores aren't, are now going to be brought up to the Fourth Circuit under a class of one rational basis. Are we becoming shopping mall operators? I'm more—I don't—I'm more open to a claim of racial discrimination, but the idea that we're talking about size or commercial mix or something, that seems to me to get very, very difficult. And, Your Honor, this court can absolutely reverse the district court on the equal protection on race. It is alleged sufficiently in the complaint because, again, the problem here is the 12C motion was decided well after discovery, well after discovery. So now we're just focused on the complaint. But we've developed a strong factual record, and the entire—one of the biggest issues in this, and it's our second argument here, is that for the 12C motion for judgment on the pleadings, the court ruled on it after discovery, after the parties engaged in extensive discovery, including eight depositions, two entity depositions, all sorts of written discovery, and did not present—and did not give the appellant, the plaintiff here, an opportunity to even have a hearing to present what sort of evidence may have existed to fill in the gaps, if there were any perceived gaps in the complaint, which is— I mean, if you're not out of court, it was dismissed without prejudice. You can give it another run-up of the flag. Your Honor, and I understand that. The only issue with—I mean, the issue with that is the case—so much resource and discovery was done at the end of the day, and all we wanted was a hearing to be able to inform the court what information was gathered in discovery to fill in any perceived gaps that the court may have thought, for Article III standing purposes in particular, and then the futility— All right, let's wait a minute. All right, thank you. Thank you, Your Honors. All right, sir, we're happy to hear your side of it. Thank you. Good morning, Your Honors. May it please the Court. Roger Thomas, arguing on behalf of Prince George's County, Maryland. I do want to start the presentation by addressing the issue of alleged failure to allow discovery in this case. So the lower court decided—made the decision on the motion for judgment under Rule 12c. That allows the court to make a ruling on the motion based upon the allegations set forth in the complaint itself. In this case, the allegations—the factual allegations are largely undisputed. We know that the appellant, Mr. Richardson, he never filed and never submitted the use and occupancy permit, which is largely at issue here. We also know that there was never any denial of a use and occupancy permit by the county. But it's not as naked as you're presenting it, that they simply didn't ask for a use and occupancy position. They were told multiple times, you can't get one because that mall is not eligible for it, multiple times. And ultimately, you even had someone who was pretty high up to say, yeah, you've been harassed, and that's what's happening here. It's one thing to say you didn't get it, but there are a lot more. There's a lot more packaged in this case, some of which is very odd as to what's going on in this case and why this is happening here. Even with the procedural posture of a 12c, typically before discovery, but you actually have discovery, and the judge then makes a 12c determination after discovery. It's kind of odd, but just to be clear, your statement that simply he didn't ask for one, there's a lot more to that than he didn't ask for a permit, in the face of all that was going on, is pretty egregious in terms of the factual determination of not asking for one. So, Your Honor, there's certainly more in this case than he simply did not submit or request the use of an occupancy permit. It didn't seem like it was any use for him to do so. If you've been told by the very people who make the determination you're not going to get one, why would you? And he kept getting fined one time after another. This is what bothers me about the case, that he kept getting fined. At the same time, he was told that it was above their pay grade to deal with this, that he didn't qualify. He was getting all sorts of explanations and then ends up with $9,500 worth of fines after being told that the Iverson Mall issue had to be resolved, and yet the bigger tenants were moved in. He was clearly treated differently, it seems to me. The question is why, and has he alleged enough? Right. So in this case, it's the county's position that clearly he has not alleged enough. There were ongoing discussions between the appellant, officials from the county executive office, officials from DPEI, and officials from the county council. It's undisputed, and it's alleged in the plaintiff's complaint, that he was told that they were looking for long-term resolution of the issues impeding the permitting process. But you've got a small business, and small business owners have difficulty in the circumstance here. And even though the focus may not be on the size of the others, but you certainly had other businesses that were being allowed to be there. In the face of repeated indications you can't get one, then you get most unusual an actual admission. You are being harassed, you are being denied, whereas others are being there. And this is the county, and in the midst of it, not that settlement makes a big difference, offers make a difference, there's something going on here that's pretty unusual for elected officials whose duties are to help citizens and small businesses of all. I mean, it's one thing to be in a small business trying to get a foothold into a mall of this size, and then denied repeatedly. Obviously, I do not know the reason. It could be for discourage. I do not understand the underlying reasons of why that all happened. But I just point that out again to go back to say it's not just a black letter case where he didn't ask for it, so therefore that's the end of the case. So, Your Honor, on the concept of quote-unquote he was denied repeatedly, the record does not support that type of determination. He was specifically told that he could not be issued the use and occupancy permit until the permitting issues associated with the mall itself were resolved. Let me ask you this in light of the frustrations and what's going on here and the rest. Why isn't this basically, if this is not a racial claim, why isn't this basically a matter of state law? There must be numerous causes of action that can be brought before the state courts on something that has to do with the utilization or the operation of a shopping mall, and there must be real property questions involved and the like. If it's a racial question, then it seems to belong in federal court, but we're not having trouble figuring out exactly what it is. But what all I'm suggesting is I don't understand why the state courts, who have the same duty that Judge Wynn rightly alluded to, of making certain to, you know, acting in the interest of the public and of their citizens. But this feels to me, if it's not a racial case, if it's just a rational basis case, it feels to me much closer to land use and much closer to property law and much closer to contractual, perhaps contractual breaches or whatever. But it sort of walks and talks to me like a state law case if it's not a racial case. And which is it? Which is it? And, Your Honor, there may have been very well, there very well may have been, you know, basis upon which the appellant or the plaintiff in this case could have opted to file his cause of action in state court and tried to invoke, you know, some state regulatory statutes or state statutes that may have had an impact on this case. But how could they? Because at least, and I'm speaking from Virginia because all my zoning experience as a lawyer came in Virginia, but you had to have a decision from which to appeal. Now, maybe Maryland's different. Maybe you can appeal. Are you saying Maryland is different, that you don't have to have a decision from which to appeal in the state system? Your Honor, I believe that the point you are making is exactly the point that's really at the crux of this case, and that there was no final decision, you know, by DPEI. Which is where the futility comes in. Exactly. But what I'm saying is to have a state law remedy, unless Maryland is different, and if it is, please tell me how, you have to have a decision from which you can appeal through the state administrative process. And that is correct, Your Honor. Okay. And we don't have that in this case present before this court, and the same would have applied had he tried to file a lawsuit in state court. What we do know is counsel has raised the issue of futility. That document just simply, that doctrine just simply does not apply here. The futility doctrine does not apply where the party is seeking the benefit, where it's simply a mere uncertainty or it may be something that's against the odds, you know, of succeeding. Here, in this case, I think one of the most relevant factual issues upon which the court bases decision, is that there was ongoing discussion, you know, trying to come up with a long-term solution about the permitting process. So there was no finality of any administrative decision, you know, that would apply here. And that is largely the basis upon which the lower court, you know, determined that this was not right and that there was not standing here for the case to move forward. The court properly decided the case based upon the allegations and the merits as pled in the complaint itself. But the final decision, a final decision can at some point, at some point a non-decision becomes a final decision. And at some point the non-decision becomes a de facto denial. And that would, again, channel it toward a state court resolution. And, Your Honor, in this case, you know, I have to respectfully disagree that there was a quote-unquote non-decision. Had there been an actual submission or filing of the use and occupancy permit and had there been an actual denial, then I think that you would have had a decision from which an appeal could be taken whether it's I mean, again, you've got to look at the facts of this case and not selectively choose how you want to look at it. But there's a letter coming from the director. And basically he is saying, let's look for long-term potential solutions. That's 14 months after he's asked for this lease. And all these things are going on. He's constantly trying. He's trying to get this business. He's gone through the liquor type situation with it in terms of getting permits for that. He's looking for ways in which he can establish his facilities. He's leasing it. He's doing everything he can. But it's the government officials that are thwarting his efforts. And Judge Wilkinson rightly alludes to, why doesn't the state court deal with things like this? Well, perhaps if it was a building code or just a denial of permit is one thing. But this is where an allegation is made that you are selectively enforcing the law and you are discriminating against this particular individual here by a governmental agency. That's a federal question. That's where we come into play on it. But to say that it was not a denial because, you know, they just say, well, we're just looking at it, is a lot more in the record than that, particularly when you get a letter from the director 14 months after he's leased. In the meantime, regardless of whether or not it's a major national corporation or some others, you're having other businesses come in. And apparently this is being offered, but not to this small business owner. Your Honor, one of the things that I think is important in the record and I want to bring to the court's attention is the county was actively working with Mr. Richardson to resolve issues of the permitting process. That included when he did actually apply for permits to begin construction on certain portions of the property at issue. You know, that process did work its way through. He was granted those permits. Counsel, what my dear friend Judge Wynn has just expressed has no limiting principle. If we're going to look at every individual who is frustrated in trying to receive a permit with regard to a shopping mall or with regard to a permit of any kind and encounters frustrations, you can all build a record of that. And we're going to say, hey, you've made a federal case of it. Well, you might be able to make a federal case of it if there's racial prejudice afoot. That's one thing. But to just chalk it up to general frustration, there is no limiting principle to that. And we are not shopping mall owners and we are not simply directors of permitting or whatever we're supposed to do to straighten all of this kind of thing out with a very tangled record and the rest. The state courts have a role in this and exactly this kind of dispute. If indeed it's not about race, if it's about race and McDonnell Douglas proof scheme is set into motion properly, then that's a different question for me. But there's no limiting principle to the alternative rational basis, class of one, that sort of stuff. See, they're different.  And Your Honor, I think the point that the court makes is What are you saying absolutely to? What part of that are you saying absolutely? Meaning that, you know, can you articulate your point of view? I heard Judge Wilkerson. You say what he just said. Sure. Well, I think what it comes down to here is, in this case, Mr. Richardson's assertion that he is somehow being denied equal protection of the law is purely speculative. The court would have to make certain findings and conclusions that are just not factually supported by the record. Under a 12C analysis, what the court properly did is it reviewed the four corners of the complaint and the allegations that were specifically pled in the complaint and determined that, you know, the matter was not right, that he lacked standing, you know, to bring this action. And that finding was absolutely correct under the standard of review on a Rule 12C complaint. The court expressly stated, you know, that it would not become involved prematurely in quote, unquote, abstract disagreements over administrative policies where a formal administrative decision has not been formalized. That simply never occurred in this case because there was never any final, you know, decision made on the UNO because the application had not been submitted, because the discussions between the county and Mr. Richardson were clearly ongoing. That is undisputed. And finally, there was never actually any denial of the use and occupancy permit. Do you need a limiting principle if you have a facts of the case like this? Because you need – everybody would go out and the small businesses would seek permits of all different types. And race is a major factor here. I understand that. But just think of it in terms of a small business who's trying to establish in a particular mall that's particularly beneficial, a lot of economic benefit, and the county officials tells them, you say not repeatedly, but it's over that 14-month period before that letter comes in and then you even get an admission, oh, you've been harassed and the whole bit that's there. We're on 12B6 here. And in the context of this, he's not able to establish his business. He's losing money the whole time. Others are getting it, and he's not. And constantly over and over, this is not something that's allowed. This is not something at all. And the allegation being equal protection on a discriminatory barrier, whether it's race or whether it's a political factor or whether it's some other type of factor that's involved in it, that, you know, I don't know why you need a limiting principle when an individual has those kind of facts. Granted, if you just come in and say I didn't get a permit because, you know, they didn't like me or something like that is another thing. Or it's a building code violation of construction. But there are facts in here that make this particular matter somewhat different than the kinds of cases that would create the so-called floodgate cases to us from my perspective. Right. And, Your Honor, I understand the perspective that Your Honor has on that issue. But here again, the lower court in this case correctly reviewed the factual allegations that were presented in the complaint itself and applied that factual framework to issues of futility that were argued by Mr. Richardson to the issues of whether or not the allegations as they were presented were too speculative, you know, for the plaintiff, for the appellant to move forward in his lawsuit. The court correctly- Have wondered a significant difference from a distance from the complaint?  That's as we've, you know, we've been talking about the frustrations that have been experienced and the repeated denials and this and that and the question. But is all of that in the complaint or is that just us talking about generally about small businesses and the woes that they may be, may or may not be experiencing? But, I mean, is all of this in the complaint? Because that's what we're dealing here with a dismissal without prejudice. And if there are these, if there are all of these problems to which my good colleague alludes, then one would think an amended complaint, which is perfectly open, would resolve those. You know, the appellant here has had the benefit of this argument. He knows what the concerns are and then he can go back. He's been without prejudice and we can't do the work for the appellant here that the appellant is supposed to do with an amended complaint. And that's, that door is open to this individual. He can put in all kinds of factual material to which we have alluded everything and then we can, then the district court can look at that. But he's asking us to do the job that the plaintiff has to do with an amended pleading. That's where we're asked to go. And that's a certain part, pieces in the adversary process have to work in the manner in which Congress and the federal rules intended. And, Your Honor, on that issue, my time has almost run out. But on that issue, you know, certainly the county filed its motion for judgment under Rule 12c based upon the allegations of facts pled in that complaint. We know that there's nothing in the record to show that the appellant ever filed the amended complaint, which he certainly could have. And also this issue about the court not affording the opportunity for discovery. Discovery was not necessary based upon the factual allegations that were largely undisputed as pled in the complaint. The lower court simply determined based upon those factual allegations that the appellant had failed to demonstrate standing nor that this case was right. And the court. That's an excellent point. And the point is that this amended complaint could have been filed. It could have shored up all the obvious weaknesses of the case. It could have presented us with adequate allegations. But it was not. The amended complaint was not filed. You can't say that would have been futile because the futility doctrine does not apply to an amended complaint. Definitely, I definitely agree with that assertion, Your Honor. The other thing that was certainly available, albeit I don't think the court was required to permit it, I mean, the plaintiff or the appellant could have, you know, requested a stay on ruling pending the filing of an amended complaint or pending discovery. But that type of relief was not necessarily required because the court had before it the complaint that had been filed, the complaint that was at issue. It's not our job to draft an amended complaint up here. That's not our job. Yes. All right. Let me see if Judge Wynn, Judge Keenan.  All right. Your Honor, we would just simply respectfully request this court uphold the decision and memorandum in order of the lower court. Thank you. And I thank you for the honor of arguing for the court. Good morning again, Your Honors. I just want to start, Judge Wilkinson, with a comment that you made. Everything being discussed here today, everything that Judge Wynn has raised is in the factual record in the complaint. This discussion that we're having today would have been great to have with the district court with respect to because the district court only ruled on the Article III standing issue. It did not get into the merits of the equal protection argument. It did not get into any other situation. But everything we've discussed today is in the factual complaint. What the district court said was you didn't apply for a permit. It was too speculative as to whether you would have obtained a permit. And so, therefore, on standing principles, you can't bring this suit. That's what the district court said. And what we're arguing here today is that the facts as pled in the complaint are sufficient for Article III standing purposes. There's a live case in controversy here. There's an injury. There's an injury in fact. There's causation. And it can be redressed by the court. That's just a bare-bones recitation of the elements of standing, and I understand that. But, I mean, we've got to identify various questions and concerns. You've got a blueprint that you can go back with and take advantage of the opportunities you have to file an amended complaint and shore up the problem. Your Honor, if we would have, if by filing an amended complaint would have fixed the issues as alleged by the district court, we would have absolutely done so. The problem was there was no fixing the issues. But if it's futile to file an amended complaint, a district court would then deny leave to amend. And the district court would say, I'm going to deny leave to amend because the amendment, any amendment you made would be futile. But that's not what the district court said here. The district court did not deny leave to amend. The district court was dismissed without prejudice, which was to open the gates for an amended complaint. And if the district court found it would be futile, all they would have had to do was to deny leave to amend. But that's not what happened. Yes, Your Honor, and I completely understand that. And I will just note that the district court order occurred after the close of discovery. Discovery was afforded. Both parties were afforded an opportunity to do discovery for six months. The appellant takes the position that there's nothing factually that can be added to the amended complaint that would have satisfied the district court on its holding for Article III standing purposes only. If the district court had denied it for deficiencies with equal protection or anything else in the claims, absolutely. Absolutely. There would have been an opportunity and we would have availed ourselves of the opportunity to file an amended complaint to affect those deficiencies. But there was nothing that could have been done with the complaint here because the district court made it clear that Mr. Richardson should have applied for the permit, should have applied for the permit. And if he was denied after applying, then we have Article III standing. And what we're arguing here today is that is not required. That's simply not required under the Supreme Court's precedent with respect to equal protection claims. I'll also note that although the Fourth Circuit has not held this, the Second Circuit in Ideal Steel, which is cited in our brief at 652 F3D 310, Second Circuit 2011, that in that case the Second Circuit held that the district court erred in dismissing a complaint under Rule 12C when evidence produced in discovery could fill the perceived gaps in the complaint. And then in the District of Maryland back in 2011, in the Stevens v. Showalter case, the District Court of Maryland recognized in the same tune, quote, there is at least some authority for the proposition that Twombly and Iqbal do not require dismissal of a suit. Well, one thing we might get straight if there was an amended complaint is what I'm confused about now, whether this is a racial equal protection claim or whether it's a rational basis equal protection claim or exactly what is it? And if there's no rational basis, then say there's no rational basis and explain exactly why. I mean, I'm speaking purely for myself, but I think that this case is not in an advantageous posture. And it may be that the district court was wrong to say the fact that you haven't applied and the fact that this was never any denial. Now, that doesn't seem to me to be conclusive with respect to the issue here because you're right to point out that the court's decisions have talked about equality of access and opportunity. And so the district court was too quick in my judgment to say, oh, well, all I need to look at. But we can remand it and say, look, here's what needs to be done that isn't done in the posture. And I should stress I'm talking only for myself, but this case could come up with us in a much more developed factual situation and just to my way of thinking. And I have no problem with admitting that the district court was too quick on the trigger here and saying, well, I'm going to deny it because you haven't applied and you haven't been formally denied. That's premature. We need to know more is what I want. That's all I'm saying. It would help me a whole lot to know more. And you've been given a blueprint. And, Your Honor, I completely agree with you, which is why we argue that it would have been more proper for the district court to convert the 12C motion to one for summary judgment since discovery had been completed, at which point both sides, and specifically the appellant here, could have produced all of the evidence that had been gathered in discovery to show that this is an equal protection claim based on two things, race and the small versus big businesses. We have gathered sufficient evidence to establish both, or at least to create a genuine issue of material fact on that. And we weren't given an opportunity to develop that record for Your Honors today. I know my time is up. I apologize. I respectfully ask that this court reverse and remand the order of the district court on the facts specific to this case. Thank you. We thank you very much. We'll come down. Do you want to take a recess? I'm OK. You're OK? Would it be OK if we just took a couple minutes? Absolutely. We'll come down and greet counsel and take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Barbara Milano Keenan